UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DALE McBRIDE,

              Plaintiff,                       CIVIL ACTION NO. 06-15032

        v.                        DISTRICT JUDGE VICTORIA A. ROBERTS

MICHAEL J. ASTRUE,[1]           MAGISTRATE JUDGE VIRGINIA M. MORGAN
COMMISSIONER OF
SOCIAL SECURITY,

              Defendant.
_____/

### REPORT AND RECOMMENDATION

## I.  Introduction

This Social Security case comes before the court on the parties' cross-motions for

summary judgment.  For the reasons stated below, the court recommends that the

Commissioner's motion be denied, that plaintiff's motion be granted in part, and that the matter

be remanded for further proceedings before the agency with respect to the functional limitations

resulting from plaintiff's mental impairments.

---

[1]Michael J. Astrue became the Commissioner of Social Security on February 12, 2007.
Pursuant to Fed.R.Civ.P. 25(d)(1) and 42 U.S.C. § 405(g), he is automatically substituted as the
defendant in this civil action.

## II. Background

On June 15, 2004, plaintiff filed an application for Social Security Disability Insurance

Benefits due to an injury to his ribs, right hand pain, trouble breathing, side pain and bipolar

disorder, with a disability onset date of August 4, 2003.[2] (Tr. 45-47, 56-57, 66) Plaintiff has a

high school education and past relevant work as a production assembler. (Tr. 58, 64)

The Social Security Administration (SSA) denied plaintiff's claims on initial review.

(Tr. 26-30) Plaintiff then requested a hearing before an administrative law judge (ALJ).

(Tr. 31) The hearing was held on July 28, 2005, before ALJ John Flanagan. (Tr. 272-304)

Plaintiff, represented by counsel, appeared and testified at the hearing. The ALJ also took

testimony from a vocational expert (VE).

On March 23, 2006, the ALJ issued a decision denying plaintiff's claim. (Tr. 13-21) The

ALJ determined that plaintiff had impairments best described as a "severe" history of recurrent

pleural effusion with related shortness of breath, obesity, multiple right rib fractures with

residual pain, non-severe bipolar disorder and sleep apnea, and non-severe right shoulder pain.

(Tr. 20) The ALJ further determined that plaintiff did not have any impairments or combination

of impairments that met or equaled in severity the criteria set forth in any applicable section of

the Listing of Impairments found at 20 C.R.F., Part 404, Subpart P, Appendix 1 of the Social

Security Regulations. (Tr. 20) In addition, the ALJ found that plaintiff retained the residual

---

[2]This date differs from the "Disability Report" where plaintiff reports the onset date of
May 27, 2003. (Tr. 57).

functional capacity (RFC) to perform a range of sedentary[3] to light exertional work[4] and that

there were a significant number of jobs in the regional and national economy that he could

perform within that RFC. (Tr. 21) Accordingly, the ALJ found that plaintiff was not "disabled"

within the meaning of the Social Security Act. (Tr. 21) Plaintiff was 48 years old at the time of

the ALJ's decision. (Tr. 17)

Following the ALJ's denial of his claim, plaintiff filed a request for review of the

decision with the SSA's Appeals Council. (Tr. 9) The Appeals Council denied the request on

September 27, 2006. (Tr. 4-6) The ALJ's decision thus became the final decision of the

Commissioner.

On November 9, 2006, plaintiff filed suit for review of the Commissioner's decision

pursuant to 42 U.S.C. § 405(g). As noted above, the parties have filed cross-motions for

summary judgment. Plaintiff contends in his motion that the ALJ erred in assessing plaintiff's

credibility by improperly evaluating the medical records found in the evidence, relying on an

inaccurate hypothetical question posed to the vocational expert, and failing to explain his

---

[3]Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. § 404.1567(a).

[4]Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, a plaintiff must have the ability to do substantially all of those activities. 20 C.F.R. § 404.1567(b).

decision. The Commissioner contends that the disability determination is supported by

substantial evidence and should thus be affirmed.

### III.  Legal Standards

#### A.  Disability Evaluation

A person is "disabled" within the meaning of the Social Security Act "if he is unable to

engage in any substantial gainful activity by reason of any medically determinable physical or

mental impairment which can be expected to result in death or which has lasted or can be

expected to last for a continuous period of not less than twelve months."  42 U.S.C. §

423(d)(1)(A).  Further,

> an individual shall be determined to be under a disability only if
> his physical or mental impairment or impairments are of such
> severity that he is not only unable to do his previous work but
> cannot, considering his age, education, and work experience,
> engage in any other kind of substantial gainful work which exists
> in the national economy, regardless of whether such work exists in
> the immediate area in which he lives, or whether a specific job
> vacancy exists for him, or whether he would be hired if he applied
> for work.

42 U.S.C. § 423(d)(2)(A).  The claimant bears of the burden of proving that he is disabled.

Foster v. Halter, 279 F.3d 348, 353 (6th Cir. 2001).

A five-step process is used to evaluate Social Security Disability claims.  See 20 C.F.R. §

404.1520(b)-(g).  As discussed in Foster, Id. at 354 (citations omitted), this process consists of

the following:

> The claimant must first show that [h]e is not engaged in substantial
> gainful activity.  Next the claimant must demonstrate that [h]e has
> a "severe impairment."  A finding of "disabled" will be made at

the third step if the claimant can then demonstrate that h[is] impairment meets the durational requirement and "meets or equals a listed impairment. If the impairment does not meet or equal a listed impairment, the fourth step requires the claimant to prove that [h]e is incapable of performing work that [h]e has done in the past. Finally, if the claimant's impairment is so severe as to preclude the performance of past work, then other factors, including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed. The burden shifts to the Commissioner at this fifth step to establish the claimant's ability to do other work.

## B. Standard of Review

Plaintiff seeks review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g), which provides, in part:

Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow.

Judicial review under § 405(g) is limited to a determination of whether the ALJ's findings are supported by substantial evidence and whether the ALJ applied the proper legal standards. Brainard v. Secretary of HHS, 889 F.2d 679, 681 (6th Cir. 1989); Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997). "Substantial evidence is more than a mere scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Brainard, 889 F.3d at 681. Further, "the decision of an ALJ is not subject to reversal, even if there is substantial evidence in the record that would

have supported an opposite conclusion, so long as substantial evidence supports the conclusion reached by the ALJ." Key, 109 F.3d at 273.

## IV.  Analysis

### A.  Plaintiff's Credibility

The ALJ determined that plaintiff's allegations regarding his limitations were not wholly credible.  (Tr. 18)  An ALJ's findings regarding the credibility of the applicant "are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility."  Walters v. Commissioner of Social Sec., 127 F.3d 525, 531 (6th Cir. 1997).  However, credibility assessments are not insulated from judicial review.  Despite the deference due, such a determination must nevertheless be supported by substantial evidence.  Id.  With regard to allegations of disabling pain, the regulations provide that a claimant's statements regarding his "pain or other symptoms will not alone establish that [he is] disabled[.]"  20 C.F.R. § 404.1529(a); see also Walters, supra, 127 F.3d at 531.  Rather, "there must be medical signs and laboratory findings which show that you have a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all of the other evidence...would lead to a conclusion that you are disabled."  20 C.F.R. § 404.1529(a).  In accordance with the Social Security Ruling 96-7, the ALJ must explain his credibility determinations in his decision such that it "must be sufficiently specific to make clear to the individual and to any subsequent reviewers that the weight the adjudicator gave to the individual's statements and the reasons for that weight."

In evaluating Mr. McBride's subjective complaints, the ALJ determined that his

testimony was not wholly credible. (Tr. 18) The plaintiff testified that he sometimes had a hard

time concentrating, and that he had bipolar disorder, which was "pretty much stabilized" with

medication. (Tr. 288, 295) He also complained of shortness of breath and estimated that he

could stand for only 30 minutes at a time, walk for only 25 minutes at a time, and sit for no more

than 20 minutes at a time before he would need to shift positions. (Tr. 287-288) He reported

that his roommate did most of the household chores, but he did some light cleaning and tried to

walk his dog everyday. (Tr. 289, 291) Plaintiff also testified that he napped daily and only

drove when necessary. (Tr. 290-291) He estimated that he could lift 10 pounds with his right

hand and more with his left hand, and that it was painful to push or pull with his right arm or

reach overhead. (Tr. 290)

The ALJ cited the following reasons as a basis for partially discrediting plaintiff's

allegations:

> The claimant is a young man who had no apparent difficulty
> sitting, standing, walking, or testifying at the hearing that could be
> observed by a layperson. His testimony was spontaneous,
> relevant, and responsive. The claimant was moderately
> overweight but not markedly so. In making this observation of the
> claimant, I am not basing my entire decision or credibility
> assessment on his appearance at the hearing alone. This is but one
> factor which I have considered with all the other evidence of
> record. Social Security Ruling 96-7p... He testified that he retired
> from GM on disability after working 28 years. I am sure this is
> true. However, it does not mean that he cannot perform some
> lighter form of work which would accommodate his limitations.
> Since he is "retired" from GM he has adopted a retired lifestyle
> and has made good progress adjusting to his retirement. (Exhibit
> 15F at 9.) As such, he has no motivation to return to active work

activity.  However, he is still considered a "younger" individual and there is a wide range of work at the sedentary level which he is still capable of performing.  The medical records from his treating sources corroborate that he is still capable of performing such work on a continuing basis.  (Tr. 18)

Plaintiff claims that the ALJ erred in finding that his allegations regarding his impairments were less than fully credible.

The court finds no basis in the record to disturb the ALJ's credibility determination, which is entitled to significant deference.  See Walters v. Commissioner of Social Sec., 127 F.3d 525, 531 (6th Cir. 1997)  To the extent that the ALJ discounted plaintiff's credibility, the record supports his determination.  While the objective medical evidence in the record substantiates that plaintiff suffers from various physical and mental impairments, it does not substantiate plaintiff's allegations as to the extent and severity of those conditions.  The record reveals that plaintiff's sharp pain resolved following a February 2004 procedure to excise the edges of his healed rib fractures.  (Tr. 168)  Although plaintiff continued to complain of extreme shortness of breath, pulmonary work-ups were normal, and the examination of plaintiff's lungs were unremarkable. (Tr. 160-63)  Plaintiff's treating physician, Dr. Cotroneo, referred plaintiff to a pulmonary specialist John Morelock, M.D., who agreed that the small pleural effusion could not account for the degree of shortness of breath that plaintiff alleged.  See 20 C.F.R. § 404.1529(b) (symptoms not found to affect ability to work unless objective evidence shows the presence of a medically determinable impairment, which could reasonably be expected to produce reported symptoms).

In addition, while the plaintiff's daily activities are certainly limited by his impairments, the evidence in the record as to those activities is not wholly consistent with the plaintiff's

assertion of total disability. The record reflects that the plaintiff's hobbies and activities include

camping, using the internet, watching TV, light cooking, and light household chores. (Tr. 240)

Plaintiff's physician, Dr. Macauley, also noted that plaintiff was "adjusting to retirement

disability." (Tr. 268) While the medical evidence notes plaintiff should "avoid heavy lifting"

prior to chest surgery (Tr. 92), the record provides no limitation on sitting, standing, lifting, or

pulling post surgery. Furthermore, the medical record provides no proscribed requirement for

the plaintiff's testimony that he takes "a couple naps. Maybe one early morning, one early

afternoon" and each nap lasts for an average of "about an hour." (Tr. 18, 290)

In light of the foregoing, and giving the ALJ's credibility determination the deference it

is due, the court finds that to the extent the ALJ discredited plaintiff's allegations and testimony

regarding his pain and limitations, there is substantial evidence in the record to support the

ALJ's determination.

## B.  Consideration of State Agency Physician and Adequacy of Hypothetical

After careful consideration of the record, the court finds that the ALJ's decision does not

appropriately evaluate the medical source opinions in accordance with 20 C.F.R. § 404.1527,

SS-R 96-2p, SS-R 96-6p, and accordingly, is not supported by substantial evidence. Under 20

C.F.R. § 404.1527(f)(2)(ii), "unless the treating source's opinion is given controlling weight, the

administrative law judge must explain in the decision the weight given to the opinions of a State

agency medical or psychological consultant or other program physician or psychologist."

Within the decision, the ALJ fails to discuss any treating source's opinion and makes conclusory

statements that the plaintiff, "has also been diagnosed with bipolar disorder, but the medical

evidence indicates that this causes no significant limitations," "has non-severe bipolar disorder because there is no evidence of any significant limitations," and "[m]entally, I find the claimant has no restrictions in his activities of daily living; social functioning; concentration, persistence and pace; and no episodes of decompensation." (Tr. 17-18)

The ALJ's decision did not explain the weight given to the State agency physician or other treating physicians opinions. Within the State agency physician's Psychiatric Review, Dr. Kriauciunas opined that Mr. McBride suffered moderate "difficulties in maintaining concentration, persistence, or pace," mild "restriction of activities of daily living" and mild "difficulties in maintaining social functioning." (Tr. 249) In making the RFC assessment, the ALJ must consider any medical opinions from acceptable medical sources that reflect judgments about the nature and severity of the impairments and resulting limitations. 20 C.F.R. § 404.1527, SS-R 96-2p, SS-R 96-6p. While the ALJ is not bound by the findings made by the state agency psychological consultant, under 20 C.F.R. § 404.1527(f), the ALJ must explain in the decision the weight given to the opinion of the state agency psychological consultant.

The evidence from the treating and examining mental health professionals is inconclusive as to whether the plaintiff suffered psychological symptoms. While the plaintiff at times denies depression and other psychological problems (Tr. 110, 122, 260, 269), the medical record is indeterminate as to whether the plaintiff experienced any mental disabilities that inhibited his ability to work. (Tr. 100, 102, 106, 111, 112, 121, 122, 127, 161, 239-250, 255) Meridian Professional Psychological Consultants recorded that plaintiff suffered depression with anger, physical problems, job conflicts, mood swings, pain, social problems, and anxiety attacks. (Tr.

100, 102, 106, 122)  A report from Dr. Cotroneo, however, noted that plaintiff suffered "no depression [or] anxiety."  (Tr. 161)

In making this recommendation, the court does not mean to suggest that an ALJ must parse through every word of a state agency physician source's notes and records and provide an explanation for the weight given to each and every finding.  However, where, as here, a state agency physician makes a recommendation that goes directly to the question of what the claimant is mentally capable of doing, § 404.1527(f) compels that the recommendation be given consideration and that an explanation be given as to the weight given to that recommendation. The ALJ's failure to fully discuss the medical basis for his RFC determination, and why he rejected certain opinions is grounds to remand this matter because it impedes meaningful review by this court.  See, e.g., Hurst v. Secretary of Health and Human Services, 753 F.2d 517 (6th Cir. 1985)(articulation of reasons for disability decision essential to meaningful appellate review); see also Bailey v. Commissioner of Social Security, 1999 WL 96920 at **4 (6th Cir.(Ohio))("Thus, an ALJ's decision must articulate with specificity reasons for the findings and conclusions that he or she makes"); Social Security Ruling (SSR) 82-62 at *4 (the "rationale for a disability decision must be written so that a clear picture of the case can be obtained").

The ALJ did use the above-cited medical sources as a basis for one hypothetical posed to the VE at the hearing, but the ALJ dismissed the hypothetical in the decision. Specifically, the ALJ posed a hypothetical question to the VE regarding the ability of an individual of plaintiff's age, education, work experience, and RFC to engage in substantial gainful activity.  The ALJ asked the VE to assume:

> We have a hypothetical individual the same age, education and
> work history as the Claimant. And from an exertional standpoint,
> for the first hypothetical I would restrict the person to both
> sedentary and light, and it would have to be a clean working
> environment, and with that restriction alone, could such a person
> alone perform past relevant work either as it is actually performed
> or as it's generally performed throughout the national economy?
> (Tr. 298)

In response to the hypothetical, the VE testified that such a person could perform past relevant

work as an unskilled assembly worker in the light end of the sedentary exertional category.

(Tr. 298)  The ALJ continued with the above hypothetical by asking the VE to:

> [R]estrict the person to sedentary exertional activities, same
> vocational background, it would be a clean working environment,
> and there would be a sit-stand option, and the sit-stand option
> would be approximately every 15 to 20 minutes.  (Tr. 299)

The VE responded to the hypothetical stating that, while the plaintiff could not perform any past

work within the stated restrictions, a person under the specified limitations could perform work

as a surveillance system monitor, cashier II, and information clerk.  (Tr. 299)  The VE also

testified that approximately 11,600 such jobs existed in the State of Michigan and 196,000

nationally.  (Tr. 300)  Based on that testimony, the ALJ concluded that plaintiff was not disabled.

Where an ALJ poses a hypothetical question to a VE that fully and accurately

incorporates a claimant's physical and mental limitations, and the VE testifies that a person with

such limitations is capable of performing a significant number of jobs in the national economy,

such testimony is sufficient to support a finding that the claimant is not disabled.  Varley v.

Secretary of Health and Human Services, 820 F.2d 777, 779 (6th Cir. 1987).  Conversely, where

the hypothetical does not paint an accurate picture of the claimant's limitations, the VE's

testimony cannot support such a finding.  The ALJ is not required to specifically refer to a

claimant's medical conditions in the hypothetical.  Webb v. Commissioner of Social Security,

368 F.3d 629 (6th Cir. 2004).  Further, the ALJ is not required to include in a hypothetical

unsubstantiated allegations and complaints.  The hypothetical "need only include the alleged

limitations of the claimant that the ALJ accepts as credible and that are supported by the

evidence."  Delgado v. Commissioner of Social Security, 30 Fed.Appx. 542, 548 (6th Cir. 2002).

In this case, plaintiff argues that the hypothetical was inaccurate because it failed to

incorporate all of his mental limitations.  Plaintiff's assertion that the hypothetical was

inaccurate is entirely dependent on his argument that the ALJ erred in failing  to evaluate or give

the appropriate weight to the opinion of the state agency physician and other examining

physicians.  In Dr. Kriauciunas' Mental RFC Assessment of plaintiff, he found, among other

things, that plaintiff suffered a moderate limitation in his "ability to understand and remember

detailed instructions, carry out detailed instructions, maintain attention and concentration for

extended periods, and respond appropriately to changes in the work setting."  (Tr.242-244)

Although the ALJ considered the state agency physician's opinion in a hypothetical (Tr. 301),

the ALJ failed to properly evaluate the findings within his decision.  (Tr. 16-21)

In one hypothetical, the ALJ asked the VE a question regarding the ability of an

individual of plaintiff's age, education, work experience, and RFC, who was further limited by a

moderate[5] impairment of concentration, persistence and pace.  (Tr. 301)  The VE testified that

---

[5]The ALJ defined "moderate" as at least a 10 to 20 percent diminishment of the capacity
to perform concentration, persistence, and pace.

the further limitation would eliminate the surveillance system monitor and probably the cashier, but not necessarily the information clerk. (Tr. 302) Plaintiff argues that "moderate" equates with "often" when it relates to the limitations in concentrations, persistence, or pace.[6] Contrary to plaintiff's assertion there is no Agency regulation or controlling case law in the Sixth Circuit equating "moderate" with "often."

In the case at hand, a State agency physician filled out a standard functional assessment called a "Psychiatric Review Technique Form" ("PRTF") since the plaintiff is not medically disabled under the Listing of Impairments found at 20 C.R.F., Part 404, Subpart P, Appendix 1 of the Social Security Regulations. The PRTF outlines the activities and functions in which a plaintiff must be sufficiently impeded by his impairment in order to qualify for disability. Currently, there is no Sixth Circuit authority that quantifies "moderate" as meaning that a plaintiff suffers a concentration deficiency of 50 percent. The PRTF merely sets forth a relative scale, and the ALJ must develop an assessment of residual functional capacity based on the entire record. See Smith v. Halter, 307 F.3d 377 (6th Cir. 2001). The ALJ must go beyond a simple frequency assessment to develop a complete and accurate assessment of the plaintiff's mental impairment as required in Varley v. Sec'y of Health & Human Servs., 820 F.2d 777 (6th Cir. 1987). Id. at 379.

Here, the ALJ defined "moderate" as at least a 10 to 20 percent diminishment of the capacity to perform concentration, persistence, and pace. (Tr. 301) The Agency regulation does

---

[6]Plaintiff argues that a "moderate" limitation is the equivalent of a 50 percent decrease in the ability to maintain attention citing Bankston v. Commissioner of Social Security, 127 F.Supp.2d 820, 827 (E.D. Mich. 2000).

not define "moderate" as a range between 10 to 20 percent. While the assessment of functional mental limitations is a complex and highly individualized process that requires the ALJ to consider multiple issues and relevant evidence, the ALJ did not discuss a basis for using this number within the posed hypothetical. Further, the ALJ did not mention in his decision the mental limitations posed in the above-stated hypothetical. As a result, the court finds, based upon a review of the record as a whole, that the hypothetical question the ALJ posed to the VE was inadequate. This court recommends the ALJ thoroughly assess and discuss all relevant medical findings in determining the plaintiff's mental limitations.

In light of the above findings, the court is presented with the question of whether this matter should be remanded for further proceedings, or whether a judicial award of benefits is warranted. In Faucher v. Secretary of Health and Human Services, 17 F.3d 171, 176 (6th Cir. 1994), the Sixth Circuit stated the following:

> If a court determines that substantial evidence does not support the Secretary's decision, the court can reverse the decision and immediately award benefits only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits. . . . A judicial award of benefits is proper only where the proof of disability is strong and evidence to the contrary is lacking.

Noting the difference in the various medical opinions found in the record, this court cannot say, on the record before it, that the evidence conclusively establishes that plaintiff is unable to engage in substantial gainful activity such that an immediate award of benefits by the district court is warranted. Thus, a remand is appropriate.

**V. Conclusion**

For the reasons stated above, the court finds that the ALJ's decision is not supported by substantial evidence. Further, the court finds, that the record does not support a judicial award of disability benefits. See Faucher v. Secretary of Health and Human Services, 17 F.3d 171, 176 (6th Cir. 1994)("If the court determined that substantial evidence does not support the Secretary's decision, the court can reversed the decision and immediately award benefits only if all essential factual issues have been resolved and the record adequate establishes a plaintiff's entitlement to benefits"). Accordingly, the court recommends that the Commissioner's motion for summary judgment be **DENIED**, that plaintiff's cross-motion for summary judgment be **GRANTED** in part, and that this matter be remanded to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Report and Recommendation.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. Thomas v. Arn, 474 U.S. 140 (1985); Howard v. Secretary of HHS, 932 F.2d 505, 508 (6th Cir. 1991); United States v. Walters, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. Willis v. Secretary of HHS, 931 F.2d 390, 401 (6th Cir. 1991); Smith v. Detroit Fed'n of Teachers Local 231, 829 F.2d 1370, 1373 (6th Cir. 1987).

Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court.  The response shall address each issue contained within the objections specifically and in the same order raised.


s/Virginia M. Morgan
Virginia M. Morgan
United States Magistrate Judge


Dated:  June 14, 2007

---

**PROOF OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record via the Court's ECF System and/or U. S. Mail on June 14, 2007.

s/Jane Johnson
Case Manager to
Magistrate Judge Virginia M. Morgan